## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | : | CRIMINAL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 05-614 |
| | : | |
| RICHARD MARIANO, | : | |
| PHILIP CHARTOCK, | : | |
| LOUIS CHARTOCK, | : | |
| JOSEPH PELLECCHIA, | : | |
| VINCENT DIPENTINO, | : | |
| REINALDO PASTRANA, | : | |
| Defendants. | : | |
| | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                   **February 27, 2006**

Philip Chartock's first motion to dismiss challenges the constitutionality of the honest services fraud charges in his indictment. His second motion contends the money laundering charges in his indictment do not involve "proceeds of unlawful activity." Louis Chartock filed a petition to join Philip Chartock's motions. For the reasons stated below, I will deny both motions for both defendants.

## I.    BACKGROUND

The facts relevant to this discussion are viewed in the light most favorable to the Government as the non-moving party.

On October 25, 2005, defendants Philip and Louis Chartock were indicted for, *inter alia*, bribing Philadelphia City Councilman Richard Mariano. As it relates to Philip

and Louis Chartock, the indictment concerns repeated efforts by Erie Steel, Ltd., ("Erie Steel") President Philip Chartock, and his father Louis, to obtain tax breaks and other more favorable treatment for his company from various agencies of the City of Philadelphia from at least 2002 to 2005.  The indictment alleges the Chartocks acted illegally to secure such benefits.  In particular, the Chartocks paid more that $23,000 in bribes and, along with others who assisted in making the bribe payments, corrupted Philadelphia City Councilman Richard Mariano.  Mariano accepted the stream of payments with the understanding that the payments were meant to influence his official actions.   He then failed to disclose these payments as he was required by law to do.  According to the indictment, Philip Chartock paid three bribes to Mariano during 2002 in the form of checks made payable to Mariano's credit card companies to pay off personal debts.

The first bribe payment occurred on May 10, 2002.  Chartock gave Mariano an Erie Steel check in the amount of $5,873.75 payable to Fleet Credit Card Service so that Mariano could pay his personal credit card bill.  Four days prior to this bribe payment, officials of the Air Management Services Division of the City of Philadelphia Department of Public Health sought to inspect Erie Steel to determine whether it was in compliance with the City's air pollution standards.  Instead of consenting to the inspection that day, Philip Chartock sought Mariano's assistance and intervention.  Mariano immediately called Department of Public Health officials to intervene on behalf of Erie Steel.  After

2

Public Health officials determined that Erie Steel was in violation of a number of air pollution regulations, Philip Chartock used Mariano's influence to postpone for more than three years what Chartock believed would be costly corrective actions that were necessary to come into compliance with these regulations.

The second bribe payment occurred on August 26, 2002.  This time, Philip Chartock was unable to give Mariano an Erie Steel check like he had before because Erie Steel's outside accountants had recently noticed and questioned the propriety of the May 10, 2002 check.  In an attempt to avoid further scrutiny, Philip Chartock changed the method in which he made the bribe payments to Mariano.  This time Chartock classified the check as a repair and maintenance expense.  A third party then deposited the Erie Steel check into her account and laundered the bribe payment by obtaining a bank check in the amount of $6,772, made payable to AT&T Universal Card, so that Mariano could pay another personal credit card bill.  At the time of the second bribe payment, defendant Philip Chartock was actively seeking Mariano's assistance in obtaining tax relief for his business.  On November 13, 2002, Mariano met with Chartock and a City official to discuss tax breaks for Erie Steel.  Even though the City official explained that Erie Steel did not meet the criteria for the tax relief, Philip Chartock and his father, Louis, continued to seek Mariano's assistance.

On November 25, 2002, Louis Chartock asked Mariano to introduce legislation making Erie Steel eligible for tax relief.  Eleven days later, on December 6, 2002, Philip

Chartock made a third bribe payment.  In an attempt to avoid scrutiny, Philip Chartock

wrote an Erie Steel check to a different third party, co-defendant Vincent DiPentino's

company, and disguised the payment by falsely classifying it as a freight, equipment, and

rental expense.  DiPentino deposited the Erie Steel check into his bank account and

laundered the bribe payment by writing a personal check in the amount of $10,900 made

payable to Capital One so that Mariano could pay another one of his personal credit card

bills.  After having received the stream of $23,000 in payments from Philip Chartock,

Mariano introduced legislation to make Erie Steel eligible for the tax relief that Philip

Chartock had sought.  In January/February 2003, Mariano recommended to the City that

Erie Steel be included in the tax relief legislation, which was known as the Keystone

Opportunity Zone program.  The City accepted Mariano's recommendation and included

Erie Steel in a proposed tax relief bill that was introduced before City Council in April

2003.  In May 2003, Mariano twice voted in favor of the tax relief legislation, and in

doing so failed to disclose his financial relationship with Erie Steel and/or recuse himself

as he was required by law to do.

After the tax relief legislation became law, Philip Chartock and his father sought

additional favors from Mariano.  From November 2003 to January 2005, Philip and Louis

Chartock repeatedly sought to take advantage of their relationship with Mariano by

seeking his assistance with, *inter alia*, energy rate reductions from PECO, resolution of

outstanding tax issues, removal of a judgment against Erie Steel, and rate reductions from Pennsylvania Workers' Compensation Rating Bureau.  In March 2004, Louis Chartock even offered a Mariano staffer money and a trip to Florida in exchange for the staffer's assistance in obtaining use and occupancy certifications.

Based upon these allegations set out in the indictment, Philip Chartock was charged with conspiracy to commit honest services fraud, in violation of 18 U.S.C. § 371; seven (7) counts of honest services mail fraud and aiding and abetting, in violation of 18 U.S.C. §§ 2, 1341 and 1346; one (1) count of honest services wire fraud and aiding and abetting, in violation of 18 U.S.C. §§ 2, 1343 and 1346; and two (2) counts of money laundering and aiding and abetting in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(I). Louis Chartock was charged with conspiracy to commit honest services fraud, in violation of 18 U.S.C. § 371; three (3) counts of honest services mail fraud and aiding and abetting, in violation of 18 U.S.C. §§ 2, 1341 and 1346; eight (8) counts of honest services wire fraud and aiding and abetting, in violation of 18 U.S.C. §§ 2, 1343 and 1346; and one (1) count of money laundering and aiding and abetting in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(I).

## II.   DISCUSSION

### A.   The Chartocks' Motion to Dismiss the Mail Fraud Claims As Unconstitutional

Philip and Louis Chartock are charged with fraud under 18 U.S.C. § 1341[1] and 18 U.S.C. § 1346.[2]  The Chartocks argue that as applied to them, 18 U.S.C. §§ 1341 and 1346 are unconstitutionally vague and overly broad.  Specifically they contend:  (1) that the statutes do not sufficiently warn Pennsylvania citizens that they could be in violation for simply helping a councilman pay his debts; and (2) that the statutes may not impose liability on a citizen solely because an elected official failed to report certain gifts and donations.

---

[1] Frauds and Swindles

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1341 (2005).

[2] Definition of "Scheme or Artifice to Defraud"

> For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

18 U.S.C. § 1346 (2005).

Vagueness may invalidate a criminal statute only in two narrow circumstances: (1) if the statute as interpreted by the courts fails to provide proper notice to a person of ordinary intelligence that certain conduct is illegal; or (2) if it encourages arbitrary and discriminatory enforcement.  City of Chicago v. Morales, 527 U.S. 41, 56 (1999).

In this case, the Chartocks aver that the charging statutes would not even apply to them had Mariano properly disclosed his gifts and payments.  This assertion is incorrect and ignores much of the behavior described in the indictment.  The Chartocks are being charged because they, through their business, allegedly paid Mariano in a *quid pro quo* exchange of official favors for cash.  The conduct alleged in the indictment is bribery. That alleged bribery was conducted through the U.S. Mail and deprived Philadelphia citizens of the honest services of their elected councilman.  A person of ordinary intelligence should know that bribery, conducted through the U.S. Mail or otherwise, is illegal.  See United States v. Tutein, 122 F. Supp. 2d 575, 579 (D. V.I. 2000).

The Chartocks attempt to distinguish this case from United States v. Antico, 275 F.3d 245 (3d Cir. 2001), and United States v. Panarella, 277 F.3d 678 (3d Cir. 2002) by arguing that only the public officials were charged in those cases.  In Antico, the defendant was charged under 18 U.S.C. §§ 1341 and 1346 for, *inter alia*, honest services fraud relating to the nepotism shown to his girlfriend in lieu of child support payments. Antico 275 F.3d at 253-54.  The defendant, Frank Antico, worked in the City of Philadelphia's Department of Licenses and Inspections for thirteen (13) years.  Id. at 249.

7

During that time, Antico extorted various businesses subject to his inspections and set his girlfriend up in a lucrative position as a private expediter[3] while he personally approved most of her clients' filings.  In upholding part of the defendant's conviction, the Third Circuit stated that for public officials, honest services frauds are generally divided into two categories:  "(1) bribery, where a legislator was paid for a particular decision or action; or (2) failure to disclose a conflict of interest resulting in personal gain."  Id. at 262.

In this case, the government alleges that both types of conduct occurred.  Although in Antico the defendant was a public servant charged under the second theory of honest services fraud, the Chartocks' argument that only public officials can be charged with the failure to disclose a conflict of interest is misguided.   The import of Antico in this case is that it demonstrates 18 U.S.C. §§ 1341 and 1346 criminalize bribing public servants and shows the statutes are not unconstitutionally vague or overly broad as they relate to bribery and honest services fraud.

With respect to the second type of honest services fraud noted in Antico, the Third Circuit has held that an indictment does not have to allege that the benefit which the official failed to disclose be directly linked to a decision which the benefit aimed to provoke.  In Panarella, the Panarella operated a tax collection business that paid $330,000

---

[3]"Expediters are independent contractors who, in exchange for a fee, represent individuals and businesses before the [Department of Licenses and Inspections] and the [Zoning Board of Adjustment].  Expediters typically prepare the paperwork required to obtain permits, licenses, or variances by [the Department of Licenses and Inspections and the Zoning Board of Adjustment]."  Antico, 275 F.3d at 252 n.4.

in consulting fees to Senator Loeper, a state legislator.  Senator Loeper then advocated on the Panarella's behalf before governmental bodies and opposed legislation which would have been detrimental to Panarella.  <u>Panarella</u>, 277 F.3d at 681.  Panarella was indicted for being an accessory after the fact to a wire fraud scheme.  <u>Id.</u>  After entering a guilty plea, Panarella challenged the sufficiency of the charge on the grounds that it failed to allege that the payments were bribes or that the legislator's actions were improperly influenced by them.  <u>Id.</u> at 682.  The Third Circuit, however, found that no such allegation of proof is required and the mere fact that the legislator received the payments while failing, in violation of state law, to disclose them before partaking in a discretionary action that benefitted the payor sufficiently set forth a charge of honest services fraud.  <u>Id.</u> at 697.  In particular, the Third Circuit found the indictment and guilty plea resting solely on the "failure to disclose" type of honest services fraud to be valid and further held "that if a public official fails to disclose a financial interest in violation of state criminal law and takes discretionary action that the official knows will directly benefit that interest, then that public official has committed honest services fraud."  <u>Panarella</u>, 277 F.3d at 697.

In this case, the charging theory of the indictment is that a conspiracy existed to deprive the citizens of Philadelphia of the honest services of Richard Mariano.  The principle offense of honest services fraud is committed by the public official, and therefore the appropriate focus in determining the legal validity of the charge is on his

conduct.  Nevertheless, the indictment in this case also alleges that the other conspirators

who were not public officials, namely Philip and Louis Chartock, aided and abetted and

conspired with Mariano in the violation.  See United States v. Murphy, 323 F.3d 102, 109

(3d Cir. 2003) (while a party boss does not owe the citizens a duty of honest services, he

could aid and abet a public official's violation of the official's own duty to provide honest

services).  In this case, the facts pled in the Chartocks' indictment support the

prosecution's charges that an honest services fraud has occurred and that the Chartocks

conspired and aided and abetted in that offense.[4]

    B.    The Chartocks' Motion to Dismiss the Money Laundering Charges

To establish a money laundering offense under 18 U.S.C. § 1956(a)(1), the

government must prove the following four elements:

> (1) an actual or attempted financial transaction; (2) involving
> the proceeds of specified unlawful activity; (3) knowledge
> that the transaction involves the proceeds of some unlawful
> activity; and (4) . . . knowledge that the transactions were
> designed in whole or in part to conceal the nature, location,
> source, ownership, or control of the proceeds of specified
> unlawful activity.

United States v. Omoruyi, 260 F.3d 291, 294-95 (3d Cir. 2001).

In this case, the Chartocks argue counts 18 and 19 of the indictment, money

laundering pursuant to 18 U.S.C. § 1956(a)(1)(B)(I), should be dismissed because the

---

[4] See also U.S. v. White, 2004 WL 2612017 (E.D. Pa. Oct. 29, 2004) (Baylson, J.) (holding the indictment
properly pled "honest services" mail or wire fraud charges as to defendant bankers, after discussing Panarella and
Antico).

money used in the Erie Steel checks sent to pay Mariano's debts was not "proceeds of some form of unlawful activity," but rather came from legitimate business revenue. Contrary to the Chartocks' claims, however, the indictment does not charge the Chartocks' act of providing Mariano with the Erie Steel checks was money laundering. Rather, the initial alleged act of giving the bribe to Mariano on May 10, 2002, is the basis of the honest services charges.  The basis for each money laundering charge is the alleged subsequent act of depositing the bribe money into third party bank accounts and then causing the third parties to write a new check or obtain a bank check made payable to Mariano's credit card companies.  See Indictment, Count 18.

In United States v. Conley, 37 F.3d 970 (3d Cir. 1994), the Third Circuit considered a similar challenge to the appropriateness of a money laundering charge and reversed the district court's dismissal "of a money laundering object of the conspiracy alleged in Count One of the indictment due to the district court's [double jeopardy concerns.]"  Id. at 971.  In Conley, the defendant was charged with both conducting an illegal gambling business and money laundering.  He moved to dismiss contending that "a wide variety of transactions involving the money placed into the video poker machines is necessarily part of the illegal gambling business, including collecting and counting money, dividing up money, transferring and transporting money, depositing money into banks and withdrawing money from banks."  Id. at 977.  The Third Circuit determined that the money laundering charges were valid because at the time of the alleged money

11

laundering, the underlying offense was "legally completed" or at a "completed phase of an ongoing offense" and, therefore, the subsequent financial transactions, performed with the knowledge to conceal, were appropriately charged as money laundering offenses.  See id. at 980 n.13.

Simply stated, the act of placing "innocent" money into an account with the intent to bribe Mariano makes the money "illegal."  That first deposit, and all subsequent transactions, are "illegal proceeds" for purposes of the money laundering statutes.

In this case, the honest services fraud offenses were legally completed or at a completed phase of an ongoing offense when the Chartocks offered a bribe to Mariano with the intent to influence his official actions.  The first alleged bribe involving the Erie Steel check made payable to Mariano's credit card company is not a basis for the money laundering charges.  According to the indictment, it is the second and third alleged bribes in which the Chartocks gave Mariano Erie Steel checks made payable to third parties that establish a money laundering violation.  The indictment charges that the Chartocks and Mariano caused the third parties to deposit the Erie Steel checks, or bribe proceeds, into their bank accounts and then to write a personal check in order to obtain a bank check made payable to Mariano's credit card companies "with knowledge that the transaction was designed, in whole or in part, to conceal and disguise the nature, source, ownership, and control of the proceeds of the specified unlawful activity."  Indictment, Counts 18 and 19, ¶ 5.  For purposes of this motion to dismiss, I find the indictment has validly

12

charged the defendants with money laundering because the transactions complained of involve the concealment of proceeds allegedly used to bribe Mariano.  <u>See</u> <u>also</u> <u>United States v. Montoya</u>, 945 F.2d 1068, 1076 (9th Cir. 1991) (state legislator properly convicted of money laundering after receiving a bribe payment by check and then deposited it; the court stated "depositing the check provided an opportunity for Montoya to carry out the illegal bribery by characterizing the funds as a legitimate honorarium") (cited approvingly by <u>United States v. Paramo</u>, 99 F.2d 1212, 1217-18 (3d Cir. 1993)).

## III.   CONCLUSION

For the reasons listed above, I find the indictment properly states violations of 18 U.S.C. §§ 1341, 1346 and 1956(a)(1)(B)(I).  The Chartocks' motions to dismiss are denied.  An appropriate Order follows.

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES of AMERICA,** | : | **CRIMINAL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 05-614** |
| | : | |
| **RICHARD MARIANO,** | : | |
| **PHILIP CHARTOCK,** | : | |
| **LOUIS CHARTOCK,** | : | |
| **JOSEPH PELLECCHIA,** | : | |
| **VINCENT DIPENTINO,** | : | |
| **REINALDO PASTRANA,** | : | |
| **Defendants.** | : | |
| | : | |

## ORDER

**AND NOW**, this 27th day of February, 2006, upon consideration of the defendant

Philip Chartock's Motions to Dismiss (Docket #'s 61 and 62), and defendant Louis

Chartock's petition to join in the Motions to Dismiss (Docket # 63), and after a review of

the Government's response and after oral argument, it is hereby **ORDERED**:

1)      Philip Chartock's Motion to Dismiss counts one (1) through eight (8) of the

indictment (Docket # 61) is **DENIED** as to both Philip and Louis Chartock.

2)      Philip Chartock's Motion to Dismiss counts eighteen (18) and nineteen (19)

of the indictment (Docket # 62) is **DENIED** as to both Philip and Louis Chartock.

BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.